**Karen PALMER**

v.

**CITY OF BENBROOK, Texas.**

**No. 18324.**

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 16, 1980.

Rehearing Denied Nov. 13, 1980.

Law Offices of George J. Petrovich, Jr. and Jerome A. Styrsky, Fort Worth, for appellant.

Henley, Cochran & Brisendine and D. Bruce Cochran, Dallas, for appellee.

HUGHES, Justice.

Karen Palmer, one of the plaintiffs below, has appealed the granting of a motion for summary judgment in favor of the defendant below, the City of Benbrook.

We affirm the summary judgment.

On November 2, 1972 the City of Benbrook passed and adopted an ordinance (City of Benbrook, Texas Ord. 315) prohibiting parking on school days in the hours from 8:00 a. m. to 5:00 p. m. on the north side of the 8000 block of Bangor Street. By the same ordinance two–hour parking was permitted in the same block, during the same time period, on the south side of the street. "No Parking 8:00 a. m. to 5:00 p. m." signs, facing west, were erected on the north side of the street and "Two–hour Parking 8:00 a. m. to 5:00 p. m." signs, facing east, were erected on the south side of the street. The 8000 block of Bangor is a two lane paved street, 28.5 feet in width, which crests a steep hill immediately east.

On August 26, 1977 Donald J. Palmer, now deceased, was driving with his daughter, Karen Palmer, in an easterly direction in the 8000 block of Bangor Street. As he approached the top of the hill located in that block he encountered a legally parked car on the south side of the street which he avoided by veering to the left. He was beside the parked vehicle when another car, driven by Brenda Denise Gilliland, crested the hill in her approach from the opposite direction and collided headon with his car. Deposition testimony of all those involved in the accident indicates that the collision occurred instantly upon sight of the "other car." As a result of the collision Donald and Karen Palmer suffered personal injury and property damage.

Donald and Karen Palmer (Plaintiff) brought suit against the City and Brenda

Denise Gilliland. (The cause of action against Gilliland was later severed from that against the City and is not involved on the appeal.)

The cause of action against the City involved three alternative theories of recovery: negligence, "special defect" liability under Tex.Rev.Civ.Stat.Ann. art. 6252–19 (known as the Texas Tort Claims Act), and nuisance.

In regard to liability the plaintiffs alleged several grounds which they argue raise issues of fact. These are:

1. The street was defectively designed, constructed and maintained and was not of sufficient width to allow two vehicles to safely pass each other, allowing for a third vehicle to be parked under city ordinance on the south side of the street;

2. The City failed to remove, correct, or to make reasonably safe or warn motorists against the aforestated defective and inherently dangerous conditions existing in the 8000 block of Bangor Street prior to the occurrence;

3. The City failed to make frequent and adequate inspections of the 8000 block of Bangor Street;

4. The City failed to improve and maintain the 8000 block of Bangor Street in conformity with the public's use thereof;

5. The City failed to maintain the 8000 block of Bangor in the condition in which it was originally constructed;

6. The City failed to properly regulate parking in the 8000 block of Bangor Street;

7. The City failed to properly regulate traffic on Bangor Street in the proximity of the occurrence in question;

8. The City allowed vehicles to park along the south side of Bangor Street in 8000 block, while prohibiting parking on the north side of the street, but failed to advise motorists in either direction of the corresponding northward shifting of effective center of the street, thereby making it dangerous for passing vehicles in opposite directions;

9. The City allowed two–way traffic in the 8000 block of Bangor Street at a time when vehicles could be parked on one side of said street;

10. The City allowed vehicles to park in the 8000 block of Bangor Street near the crest of the hill located therein;

11. The City created and allowed to remain in existence a "special defect," as that term is expressed in Art. 6252–19 §§ 14(12) and 18(b), Tex.Rev.Civ.Stat.Ann., which was the presence of an obstruction to vehicular traffic in the 8000 block of Bangor Street every time an automobile parked on the south side of the street, which amounted to a premises defect;

12. The City created and allowed to remain in existence a nuisance in making the 8000 block of Bangor too narrow and dangerous for the safe passage of traffic flowing in the opposite directions.

The City answered and later moved for summary judgment basing its position entirely on governmental immunity. The trial court granted the motion for summary judgment without mentioning the alternative theories. Only Karen Palmer has prosecuted this appeal.

Ms. Palmer's only point of error is that the trial court erred in granting the City's motion for summary judgment. We must determine whether summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex. 1970).

## THE NEGLIGENCE THEORY

Ms. Palmer's brief argues that her allegations, listed above, raise issues of fact as to the negligence of the City. More specifically, she asserts that she has raised numerous allegations of actions and omissions on the part of the City which raises a fact question of whether the City negligently performed or failed to perform its mixed governmental and proprietary function of maintaining the 8000 block of Bangor Street in a reasonably

safe condition and/or in failing to warn of such unsafe condition.

■ Under the common law a governmental entity can not be held liable for the negligent performance of a governmental function but it can be held liable for the negligent performance of a proprietary function. *City of Houston v. Quinones*, 142 Tex. 282, 177 S.W.2d 259 (1944).

In the case where a mixture of governmental and proprietary functions is involved the common–law rule is that the governmental entity is accountable for the negligence of those acting in its behalf. *City of Houston v. Bush*, 566 S.W.2d 33 (Tex.Civ.App.–Beaumont 1978, writ ref'd n. r. e.). The question then arises as to whether the City was engaged in a governmental or a proprietary function.

■ In Texas a city has the right, in the exercise of its discretionary governmental powers, to decide the width of its streets and the width it would improve the same. *City of Waco v. Darnell*, 35 S.W.2d 134 (Tex.Com.App. 1931, holding approved). There it was said, at page 135:

"The rule of immunity from liability of a city in the exercise of governmental functions extends to discretionary powers, and generally there is no liability for damages resulting either from the failure to exercise, the manner of exercising, or errors of judgment in exercising, such discretionary powers."

■ It is also well settled in Texas that the regulation, by municipalities, of traffic and parking on city streets, pursuant to their police power, is a governmental function, *City of Austin v. Daniels*, 322 S.W.2d 384 (Tex.Civ.App.–Austin 1959 aff'd 335 S.W.2d 753); *Sarmiento v. City of Corpus Christi*, 465 S.W.2d 813 (Tex.Civ.App.–Corpus Christi 1971, no writ).

Ms. Palmer argues that a mixed governmental and proprietary function is involved here because, under the cases it cites, municipalities are under a proprietary duty to maintain their streets in a reasonably safe condition. None of the cases relied upon are directly on point. No Texas case has

been cited, and we have found none, where a city, in regulating traffic or parking, was held liable because its *regulations* allowed a dangerous condition to exist. On the contrary, municipal liability has been found only where a "defect" such as a hole, ridge or other imperfection in the street itself has been held to have caused damages or where an obstruction is present in a place where it is not usually found. *Jezek v. City of Midland*, 605 S.W.2d 544 (Tex., 1980); *City of Port Arthur v. Wallace*, 141 Tex. 201, 171 S.W.2d 480 (1943); *Crow v. City of San Antonio*, 301 S.W.2d 628 (Tex. 1957); *City of Austin v. Daniels, supra; Kling v. City of Austin*, 62 S.W.2d 689 (Tex.Civ.App.–Austin 1933, no writ); *Clark v. City of Athens*, 253 S.W. 574 (Tex.Civ.App.–Beaumont ¹⁹23, writ dism'd). The dangerous conditions discussed in these cases involved the ministerial, as opposed to discretionary duty, of maintenance of streets.

■ We hold that the first ten grounds of recovery urged by Ms. Palmer involve governmental functions only and, therefore, under the common–law to be applied to these, the City is immune from liability.

The next allegations of Ms. Palmer involve the Texas Tort Claims Act which, as it applies to municipalities, is applicable only to governmental functions. Texas Tort Claims Act Section 18(a); *Turvey v. City of Houston*, 602 S.W.2d 517 (Tex. 1980). Section 3 of the Act demarcates the liability of governmental units:

"Liability of governmental units

"Sec. 3. Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor–driven vehicle and *motor–driven equipment, other* than motor–driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or

employee would be personally liable to the claimant in accordance with the law of this state, *or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state.* Such liability is subject to the exceptions contained herein, and it shall not extend to punitive or exemplary damages. Liability hereunder shall be limited to $100,000 per person and $300,000 for any single occurrence for bodily injury or death and to $10,000 for any single occurrence for injury to or destruction of property." (Emphasis ours.)

The City's failure to provide wider lanes is the basis of plaintiff's assertion that, under the above italicized language of section 3 and the case *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex. 1976), there is a waiver of governmental immunity. In *Lowe* an injured football player sued the university for furnishing defective equipment and for failing to furnish him proper protective items of personal property. Ms. Palmer's interpretation of *Lowe* and section 3 is that the Texas Tort Claims Act makes no distinction between governmental acts which are discretionary and those which are ministerial, and that therefore the discretionary decision of the City to not widen its lanes of traffic on Bangor Street is not immune as an act of negligence. We disagree.

█ We hold that the determination of the width of traffic lanes comes within the discretionary regulation and control of traffic function of the municipality. In *Jackson v. City of Corpus Christi*, 484 S.W.2d 806 (Tex.Civ.App.–Corpus Christi 1972, writ ref'd n. r. e.), it was alleged that the City of Corpus Christi was liable for the negligence of one of its police officers in failing to direct traffic. Plaintiffs cited the language of section 3 which waives immunity for a government employee's negligence "arising from the operation or use of a motor–driven vehicle." The court in *Jackson*, at page 808, pointed out,

"It has long been the rule in this State that the regulation, direction and control of traffic on, over and across a public street or highway is a governmental function as a reasonable exercise of police power, and that while engaged in such function a city is not liable in damages for the negligent acts or omissions of its employees, agents or officials."

The court held "[t]he allegations of negligence related to the doing or performing of something involving the practical application of the principles or processes of directing and controlling traffic . . ."–a discretionary exercise of police power.

It has also been written that "many of the tort claims statutes, including the Texas Act, exclude discretionary acts from liability." Greenhill & Murto, *Observation: Governmental Immunity*, 49 Texas L. Rev. 472 (1971). These authors cite, in particular, section 14(7) of the Texas Tort Claims Act which exempts governmental units from claims based upon the failure of a unit of government to perform a discretionary act. We hold untenable plaintiff's assertion of the City's liability for negligence in failing to widen its traffic lanes.

Ms. Palmer's first ten grounds of liability, which are those asserting negligence liability, are ill–founded as a matter of law.

## THE PREMISES DEFECTS AND SPECIAL DEFECTS THEORY

Sections 14(12) and 18(b) of the Texas Tort Claims Act read as follows:

"Exemptions

"Sec. 14. The provisions of this Act shall not apply to: "(12) Any claim arising from the absence, condition, or malfunction of any traffic or road sign, signal, or warning device unless such absence, condition, or malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice, or any claim arising from the removal or destruction of such signs, signals or devices by third parties except on failure of the unit of government to correct the same within such reasonable time, after

actual notice. *Nothing herein shall give rise to liability arising from the failure of any unit of government to initially place any of the above signs, signals, or devices when such failure is the result of discretionary actions of said governmental unit. The signs, signals and warning devices enumerated above are those used in connection with hazards normally connected with the use of the roadway, and this section shall not apply to the duty to warn of special defects such as excavations or roadway obstructions.*"

"Exclusions

"Sec. 18. . . .

"(b) As to premise defects, the unit of government shall owe to any claimant only the duty owed by private person to a licensee on private property, unless payment has been made by the claimant for the use of the premises. *Provided, however, that the limitation of duty contained in this subsection shall not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads or streets,* nor shall it apply to any such duty to warn of the absence, condition or malfunction of traffic signs, signals or warning devices as is required in Section 14(12) hereof." (Emphasis ours.)

Ms. Palmer contends that a vehicle parked legally on the south side of Bangor Street is an obstruction in the street or in such close proximity to the street to render the flow of traffic unsafe and consequently, is a special defect under section 14(12) about which the City must publish a warning. It also, she argues, is a special (premises) defect which forms a limitation to the section 18(b) exclusion.

We first determine if a legally parked car at the crest of a hill can constitute a "special defect." Under the *ejusdem generis* rule, we are to construe "special defect" to include those defects of the same kind or class as the ones expressly mentioned—"excavations and roadway obstructions." *County of Harris v. Eaton*, 573 S.W.2d 177 (Tex. 1978).

Ms. Palmer cited no cases, and we have found none, where a discretionary action of a governmental unit was considered to have created a special or premises defect. The cases dealing with this subject have been confined to the routine ministerial maintenance of streets. *County of Harris v. Eaton*, 573 S.W.2d 177 (Tex. 1978); *Sutton v. State Highway Dept.*, 549 S.W.2d 59 (Tex. Civ.App. Waco 1977, writ ref'd n.r.e.). We find it very difficult to see how a legally parked automobile could constitute a "defect" as that term is normally defined.

■ We hold that, as a matter of law, a legally parked car and the consequence of a narrowed passageway, is a "hazard[s] normally connected with the use of the roadway" under section 14(12) of the Act and therefore the City cannot be held liable for failing to warn of the "condition" because its failure to warn was "the result of discretionary actions of said governmental unit."

## THE NUISANCE THEORY

Plaintiff contends that because the City has a duty to maintain its streets in a reasonably safe condition it has an obligation to employ reasonably available means of guarding against or minimizing unsafe conditions, and in consequence, that a court may find the narrowness of the street resulting from the parking regulations to factually have caused a nuisance.

■■ In Texas a city, otherwise immune from liability when performing a governmental function, loses that immunity if the danger for which it is responsible becomes a nuisance. *City of Houston v. George*, 479 S.W.2d 257 (Tex. 1972). Here however, we hold the real basis of Ms. Palmer's claim is negligence and not nuisance, therefore, the City is not liable.

■ Before a city can be liable for creating or maintaining a nuisance, there must be something inherently dangerous in the very thing or condition claimed to be the nuisance, and must be a danger beyond that arising from negligence in its maintenance. *Callaway v. City of Odessa*, 602 S.W.2d 330

(Tex.Civ.App.–El Paso 1980, no writ); *Parson v. Texas City*, 259 S.W.2d 333 (Tex.Civ. App.–Fort Worth 1953, writ ref'd). We hold Ms. Palmer's nuisance allegation unsupportable as a matter of law.

We hold that the City of Benbrook was entitled to summary judgment as a matter of law, there having been no question of material fact presented. We overrule point of error one.

The summary judgment is affirmed.