**The CITY OF HOUSTON, Appellant,**

v.

**Ralph R. STODDARD, Ind., et al., Appellees.**

**No. 01–84–0112–CV.**

Court of Appeals of Texas,
Houston (1st Dist.)

July 5, 1984.

Dale M. Tingleaf, Houston, for appellant.

Ronnie E. Pfeiffer, Whittington, Pfeiffer & Vacek, Neal D. Cannon, Jr., Houston, for appellee.

Before JACK SMITH, COHEN and BASS, JJ.

## OPINION

COHEN, Justice.

The appellees recovered a judgment against The City of Houston under the Texas Tort Claims Act for damages received in an auto accident caused by a malfunctioning traffic signal. A vehicle driven by Debra Lynn Stoddard collided with one driven by Lynnell Durdan resulting in injuries to Durdan and the death of Stoddard. Ralph R. Stoddard, individually, and as administrator of the estate of his

daughter, Debra Lynn Stoddard, brought suit against The City of Houston for wrongful death and for physical pain and mental anguish of Ms. Stoddard and for his own mental anguish. Ms. Durdan also sued the City seeking damages for her injuries.

The jury answered all special issues in favor of the plaintiffs. It made awards of: (1) $60,000 to Ralph R. Stoddard, as administrator of the estate of Debra Lynn Stoddard, for physical pain and mental anguish she suffered before her death; (2) $150,000 to Ralph R. Stoddard, individually, for mental anguish in the past and future resulting from the death of his daughter; and (3) $25,000 to Lynnell Durdan for physical pain and mental anguish in the past and future. However, because the Texas Tort Claims Act limits recovery for bodily injury or death to $100,000 per person for any single occurrence, the trial judge reduced proportionately the awards to Mr. Stoddard, resulting in a judgment for $28,-571.42 as administrator of his daughter's estate, and $71,428.58 to him individually. Judgment in favor of Ms. Durdan was awarded for the entire amount found by the jury.

■ The first seven points of error contend that there is either no evidence or insufficient evidence to prove that the traffic signal was malfunctioning, that any malfunction proximately caused the collision, and that the City failed to repair any malfunction within a reasonable time after notice.

Clyde Blackman, another motorist involved in the accident, was the driver of the tenth car in a line of traffic approaching the intersection. He stated that it took approximately 15 minutes to travel 200 feet as he approached the intersection and, after he became the first car in line at the intersection, he waited approximately 3 minutes for the light to change from red to green. Two witnesses with expert knowledge of the operation of the City's traffic signals, Mr. Hensch and Mr. Clary, testified that it should have taken no more than 2½ minutes for Blackman's vehicle to have traveled from 10 cars away to the edge of the intersection, if the lights had been functioning normally.

Houston Police Officer Hill, who had been trained in accident reconstruction, arrived on the scene at 10:30 a.m., 50 minutes after the accident, and observed the lights malfunctioning by cycling through rapidly. He testified that he heard a report over his radio at 9:15 a.m., 25 minutes prior to the accident, that the lights at the intersection were malfunctioning. His accident report stated that a malfunctioning signal caused the accident.

The City's traffic and transportation radio log and trouble report book indicated that on the night before the accident, at 6:40 p.m., the City received a call that the light was malfunctioning and, at 6:48 p.m., dispatched a repairman, who corrected the problem at 7:22 p.m. The repairman's job ticket shows that the lights were cycling through and that he "replaced the index interlock contacts". The log book indicates another complaint at 7:20 a.m. on the day of the accident and the notation that "Officer called complaint 9:15 a.m." The log book indicates that an employee was dispatched at 8:25 a.m. on the date of the accident to repair the malfunction, but that was crossed out to reflect 10:25 a.m. A job ticket was filled out for the repair of the signal at 10:52 a.m., approximately 72 minutes after the accident, which states, "found index contact missing off of LS controller". Another job ticket indicates that the index contact was replaced at 1:45 p.m. on that day.

An expert witness testified that the failure of an index contact to function properly would cause the lights to cycle through without stopping. Mr. Hensch, a City employee and electrical engineer, testified that the signal "rolls through" if there is no index contact. There was evidence that the box where the index contact was located was supposed to be locked at all times, and it was established that a "roll through" is the same thing as a rapid cycling of the lights.

The City's own records thus indicate that the signal was cycling through, and the

City had notice of the malfunction the night before the accident, and, again, on two separate occasions, the first being at least two hours before the accident. This notice is confirmed by the City's unsuccessful attempt to repair the light.

The evidence also demonstrates that the malfunctioning of the light caused the accident. The weather was clear and the roads were dry. The jury was asked if either Debra Stoddard or Lynnell Durdan failed to keep a proper lookout, failed to apply brakes, or failed to control speed, and it found that neither was negligent in any of these respects. The jury also found that Debra Stoddard did enter the intersection while the traffic signal was red; however, it found that such conduct was not negligent. There is no suggestion in the pleadings, evidence, or jury charge that the accident was caused by mechanical failure of any vehicle or any sudden emergency, such as a heart attack or other impairment, suffered by any driver. There is no evidence or assertion that any driver was intoxicated. The City did not request an instruction to the jury defining an unavoidable accident. Nevertheless, the City insists that the malfunction of the traffic light was not shown to be the proximate cause of the collision.

The record thus indicates that the traffic signal was malfunctioning, that the event which occurred was consistent with what should have been foreseen from a malfunctioning signal, that every defensive theory offered by the City as an alternate explanation for the collision was rejected by the jury, and that no other conceivable explanation of the collision has any support in the evidence. The appellees have presented adequate circumstantial evidence that the malfunction did cause the accident, and the City has failed to prove any other reasonable hypothesis explaining the accident. The evidence, considered in context and taken as a whole, strongly supports the jury's verdict. We overrule the City's points of error one through seven.

■ The City's eighth point of error argues that the court erred in admitting, over objection, hearsay evidence from Mr. Blackman. The relevant testimony was:

Q: After the pieces stopped falling around and the car came to rest on your left front bumper, what happened?

A: The usual collection of gawkers, seers, hangeroners, people-they all started shouting and screaming, "That light has been malfunctioning for weeks," and those kind of statements were made, but who they were I don't know.

The City relies on *Southwestern Bell Telephone Co. v. Griffith*, 575 S.W.2d 92, 103 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In *Griffith*, the court relied heavily upon the fact that statements made were not spontaneous because the unidentified declarant made them approximately 45 minutes after the accident. The statements in the instant case were made immediately after the accident.

The appellees rely upon *Jackson v. Feeler*, 380 S.W.2d 161, 164 (Tex.Civ.App.—Austin 1964, no writ), in which the court held admissible an excited utterance made by an unknown bystander. That case is distinguishable, however, because the bystander's assertion that the defendant had run a stop sign was immediately followed by the defendant's statement admitting that she had been looking at children on a bicycle, instead of at the road. Thus, the bystander's hearsay statement was corroborated by the defendant's admission against interest, a recognized exception to the hearsay rule. This distinguishes *Jackson* from the case at bar.

We need not decide whether the statements of the unidentified bystanders were admissible, however, because their admission, if error, was harmless. It was cumulative of overwhelming evidence from the City's own records and employees that the traffic signal had been malfunctioning both immediately before and immediately after the accident. The City's knowledge of the malfunction was shown by its own records. This is not a case in which punitive damages were awarded against the City for gross negligence for having long neglected the hazard. The plaintiffs' actual damages

were the same regardless of how long the malfunction had existed. It is unlikely that the evidence caused the rendition of an improper verdict. Tex.Rule Civ.Pro. 434. Point of error number eight is overruled.

The ninth point of error contends that the court erred by failing to grant the City's motion for mistrial and later the City's motion for new trial because of jury misconduct. After the jury had been discharged but before the judgment was signed, the court held a hearing on the City's motion for a mistrial. Four jurors among the ten who signed the verdict testified, and one gave an affidavit. Three jurors, Ms. Gooding, Ms. McIlhenny, and Ms. Sylvan, stated that the jury discussed Ms. Durdan's mental anguish from causing Debra Stoddard's death and based the $25,-000.00 award mainly on such anguish. Ms. Gooding stated that there was very little discussion of the issue, that the foreman instructed the jury not to consider it, and that Ms. Durdan's physical injuries were also discussed. Ms. Sylvan stated that the award of $25,000 was partially for physical pain and mental anguish for Ms. Durdan's own injuries. Ms. McIlhenny stated that Ms. Durdan's physical pain and suffering as a result of her own injuries was discussed.

The other two jurors who testified were Mr. Elder and Ms. Lamont. Mr. Elder specifically denied that there was any discussion of Ms. Durdan's mental anguish arising from Ms. Stoddard's death, but stated that Ms. Durdan's own pain and suffering were discussed. Ms. Lamont stated that Ms. Stoddard's death was never specifically discussed, but was "assumed."

The court denied the motion for mistrial, and, after the judgment was signed, the City filed its motion for new trial on the same basis alleged in its motion for mistrial. There was never a hearing on the motion for new trial, no evidence was ever presented, and the motion was overruled by operation of law.

Ms. Durdan testified that her greatest damage from the accident was her recollection of having killed Ms. Stoddard and that she remembered this when she drove past the intersection. She also testified to severe headaches for three weeks after the accident and intermittent aches and pains thereafter. The appellant never objected to Ms. Durdan's testimony regarding her anguish over having caused Ms. Stoddard's death. It never asked for a definition of mental anguish in the jury charge limiting the jury's consideration to mental anguish Ms. Durdan suffered as a result of injuries to her own person.

The relevant special issue asked the jury to award a single lump-sum amount in dollars and cents for all of Ms. Durdan's damages, including physical pain and mental anguish in the past and physical pain and mental anguish in the future. Thus, it is impossible to tell how much of the $25,000 verdict was for mental anguish, if any, and how much of any mental anguish award was due to anguish arising from Ms. Durdan's own injuries and how much was for having caused the death of Ms. Stoddard. The City did not object to the form of the special issue or take any steps at trial to prevent the harm of which it now complains. Thus, we are left with a lump sum damage issue which makes it impossible to determine or separate the components of the $25,000 award.

 In order to establish its right to a new trial, the City must show 1) that misconduct occurred; 2) that it was material misconduct; and 3) that, based on the record as a whole, the misconduct was probably harmful. *Flores v. Dosher,* 622 S.W.2d 573, 575 (Tex.1981). "Whether the alleged misconduct has occurred is a question of fact, and if there is conflicting evidence on this issue, the finding of the trial court is binding on appellate review." *Strange v. Treasure City,* 608 S.W.2d 604, 606 (Tex.1980). Here, as in *Strange,* the trial court was not requested to and did not make findings of fact and conclusions of law. Since there are no specific findings of fact as to whether the alleged misconduct occurred or was material, it is presumed that material misconduct did not occur, pro-

vided there is evidence to support such a finding. *Strange, supra,* at 606.

The trial judge could reasonably have concluded from Elder's and Lamont's testimony that no improper discussion occurred, or from Gooding's testimony that any improper discussion which did occur was brief and was promptly terminated by the foreman's warnings, and from testimony by four of the jurors that the jury properly considered Ms. Durdan's physical pain and suffering in reaching its answer. Based on this testimony and the absence of fact findings, the trial court's decision is binding. *Brawley v. Bowen,* 387 S.W.2d 383 (Tex. 1965).

Ground of error nine is overruled.[1]

■ The City's tenth point of error argues that the amount awarded to Ms. Durdan for her injuries was vastly excessive and should be reduced by $24,500, to an award of $500.00. Ms. Durdan testified that she had "terrific" headaches for three weeks immediately after the accident and pain in her neck, head, and shoulders which continued intermittently from the date of the accident until the time of trial, approximately 6 years. She sought medical attention for the injuries which arose directly from the physical trauma of the accident. We do not find the award excessive based on the pain and suffering proved. See and compare, *Clark v. Smith,* 494 S.W.2d 192, 198 (Tex.Civ.App.—Dallas, 1973, writ ref'd n.r.e.), and *Eans v. Grocer Supply Co. Inc.,* 580 S.W.2d 17, 23–24 (Tex.Civ.App.— Houston [1st Dist.] 1979, no writ), both relied on by the City. Point of error ten is overruled.

The City's eleventh point of error complains that the trial court erred in denying the City's motion for judgment notwithstanding the verdict, and in entering judgment for Ralph Stoddard for damages for mental anguish he suffered as the result of the death of Debra Stoddard, because the law does not permit the recovery of damages for a parent's mental anguish arising from the death of an adult daughter. The City does not challenge the sufficiency or the admissibility of the evidence supporting the award of damages to Mr. Stoddard.

■ The Texas Wrongful Death Statute, Tex.Rev.Civ.Stat.Ann. arts. 4671 et seq. 4675 (Vernon 1984), permits a parent to sue for the wrongful death of a child. The statute does not limit standing to parents of a minor child, nor does the statute provide what elements of damage are recoverable. The statute does not prohibit recovery of damages by a parent for mental anguish caused by the wrongful death of an adult son or daughter.

■ Damages for mental anguish are recoverable by a parent for the death of a minor child. *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983). Two justices, among the six in the majority in *Sanchez, supra,* would permit recovery of damages for mental anguish caused by the death of an adult son or daughter. *Id.* at 258 (Ray, J., concurring on rehearing). The reasons stated in *Sanchez* for overruling the pecuniary loss damage rule for the death of a minor child apply equally to a parent who has suffered the loss of a child over the age of eighteen. We choose to follow the concurring opinion in *Sanchez v. Schlinder.* We hold that a parent may recover damages for mental anguish caused by the wrongful death of an adult son or daughter. Point of error number eleven is overruled.

The judgment is affirmed.

**1.** In *Pace v. Huebner,* 610 S.W.2d 561 (Tex.Civ. App.—Eastland, 1981, writ ref'd n.r.e.), a motion for new trial based on jury misconduct was deemed waived because the hearing thereon occurred before the motion was filed. See Tex.R. Civ.P. 327. To apply the *Pace* rule here would yield a harsh result. The City's complaint was made known to the trial court and was fully litigated at the hearing on the motion for mistrial. Furthermore, Rule 327 expressly permits the judge to consider "evidence both on the hearing of the motion *and the trial of the case and from the record as a whole ...*".