Elpidio G. VILLARREAL, as Next Friend of Joseph E. Villarreal, A Minor Child and as Administrator of the Estate of Pauline Villarreal, Deceased, and Joseph E. Villarreal, Appellants,

v.

The STATE of Texas (State Department of Highways and Public Transportation), City of Dallas and Kenneth Lee Kresin, Jointly and Severally, Appellees.

No. 05–90–00916–CV.

Court of Appeals of Texas, Dallas.

April 15, 1991.

Rehearing Denied June 6, 1991.

Gary T. MacInnis, Austin, for appellants.

Randy Hill, Austin, John E. Kirby, Dallas, for appellees.

Before ENOCH, C.J., and CHADICK [1] and CARVER [2], JJ.

## OPINION

ENOCH, Chief Justice.

This is an appeal from a take-nothing judgment in favor of the State of Texas and the City of Dallas rendered in a suit for damages for the death of Pauline Villarreal. The trial court directed a verdict in favor of the State and the City, finding that the omitted signage at issue was discretionary and therefore outside the application of the Tort Claims Act. We affirm the judgment of the trial court.

### FACTS

On March 24, 1985, Pauline Villarreal was driving eastbound on I-30 in Dallas. As she prepared to exit the freeway, she approached the exit ramp for Industrial Boulevard. Kenneth Kresin entered this same exit ramp from Industrial Boulevard, heading westbound, driving in the wrong direction. Pauline Villarreal died from injuries she suffered in the collision which resulted.

### ABSENCE OF SIGNS

#### A. UNDER TORT CLAIMS ACT

■ Appellants brought this claim pursuant to the Texas Tort Claims Act. TEX. CIV.PRAC. & REM.CODE ANN. ch. 101 (Vernon 1986). They rely on language from the 1980 Manual on Uniform Traffic Control Devices to create a duty on the part of either the City or the State to have placed a variety of mandatory signs which might have alerted Kresin that he had improperly entered the exit ramp. It is this allegation that the placement of these signs was mandatory that appellants claim allows this cause of action. Section 101.060(a)(1) of the Civil Practice and Remedies Code provides:

This chapter does not apply to a claim arising from:

(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is the result of discretionary action of the governmental unit.

Appellants rely on the statute which authorized creation of the Manual of Uniform Traffic Control Devices and the language of the manual itself to require mandatory replacement of non-conforming or non-existent signage no later than December 1982. TEX.REV.CIV.STAT.ANN. art. 6701d §§ 29–31 (Vernon 1977); 1980 Manual of Uniform Traffic Control Devices at 1–viii. However, appellants' selective interpretations of these regulations ignores language that clearly makes erection of the signs discretionary. Sections 30 and 31, applying to the State or a local authority respectively, recite that the entity *"may* place and maintain ... traffic-control devices as [it] *may* deem necessary." (emphasis added). *See Shives v. State,* 743 S.W.2d 714, 717 (Tex. App.—El Paso 1987, writ denied). And the language immediately preceding the language in the Manual itself upon which appellants rely reads: "All existing traffic control devices or installations not in conformance with standards in this Manual

---

**1.** The Honorable T.C. Chadick, Justice, Retired, Supreme Court of Texas, sitting by assignment.

**2.** The Honorable Spencer Carver, Justice, Retired, Court of Appeals, Fifth District of Texas as Dallas, sitting by assignment.

shall be changed to conform to the new standards herein *when replacement becomes necessary." Manual,* at 1–viii. In those cases cited by appellants, liability was premised on failure to comply with the Manual in the negligent construction or maintenance of signs which an entity had chosen to erect. These cases all hold that once the decision has been made to erect a particular sign (or when dealing with mandatory signage), these signs must conform to the specifications of the Manual. None of these cases, however, create liability for failure to erect a discretionary sign. Because the trial court held, and we agree, that the placement of the signs was a discretionary act on the part of the City and State, the Tort Claims Act does not apply and no statutory cause of action is created by it. No issues of fact existed in this regard which required submission to the jury, making a directed verdict proper. Consequently, we overrule all appellants' points of error based on a claim of failure to erect proper signage under the Tort Claims Act, specifically points one thru five.

## B. AS PROPRIETARY FUNCTION

■ In point of error six, appellants allege that the City of Dallas is also liable independent of the Tort Claims Act. They claim that the City was under a duty to maintain safe streets and to warn of defects, a proprietary function which is excluded from the Tort Claims Act. As authority for this proposition, they cite to *Turvey v. City of Houston,* 602 S.W.2d 517, 518 (Tex.1980). However, they attempt to then use the proprietary function of street maintenance to make the placing and maintaining of street signs and traffic control devices a proprietary function. To accomplish this, they rely on *City of Pasadena v. Freeman,* 731 S.W.2d 590, 593 (Tex.App.—Houston [14th Dist.] 1987), *aff'd on other grounds,* 744 S.W.2d 923 (Tex.1988). The Houston Court of Appeals held that erecting a barricade to warn vehicular traffic that a dead-end street terminated in a drainage ditch fell under the city's proprietary function of maintaining city streets. In affirming on other

grounds, the Texas Supreme Court merely concluded that the holding that erection of barricades falls within a city's proprietary functions presented no error requiring reversal. *Freeman,* 744 S.W.2d at 924.

We find this language unpersuasive in appellants' efforts to recharacterize the governmental function of installation of street signs and traffic control devices into the proprietary function of maintenance of safe streets, traffic control devices, and highways. Maintenance involves preservation of a highway as it was originally designed and constructed. *Shives,* 743 S.W.2d at 716. We find further support for appellees' position in the express language of *Freeman:* "Traffic control is a governmental function." *Freeman,* 731 S.W.2d at 593. *See also Palmer v. City of Benbrook,* 607 S.W.2d 295, 298 (Tex.Civ. App.—Fort Worth 1980, writ ref'd n.r.e.). Liability for governmental functions exists only as created by the Texas Tort Claims Act. As previously discussed, failure to place discretionary traffic control devices does not give rise to a claim under this Act; therefore, no claim exists for failure to sign the exit ramp under either theory presented. If by this point of error appellants attempt to raise the issue of a special defect giving rise to this duty to warn, we will address this argument in dealing with their final point of error. Consequently, we overrule appellants' sixth point of error.

## SPECIAL DEFECT

■ In their seventh point of error, appellants allege that both the City and the State had a duty to warn of a special defect. This duty to warn of special defects is expressly removed from the exemption created for discretionary signage under section 101.060. TEX.CIV.PRAC. & REM. CODE ANN. § 101.060(c) (Vernon 1986). Appellants claim that the southernmost median cut on Industrial Boulevard was a special defect requiring warning signs because it created a dangerous and confusing condition allowing a driver to enter the exit ramp travelling in the wrong direction.

The term "special defect" is not defined in the statute, but cases have long interpreted this language under the rule of *ejusdem generis. County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex.1978). Special defects would be construed to include those of the same kind and class as those examples expressly mentioned—excavations or roadway obstructions. *Palmer*, 607 S.W.2d at 300. Therefore, a special defect must be something out of the ordinary course of events rather than a long-standard, routine, or permanent defect. *Tarrant County Water Control & Improvement Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 433 (Tex.App.—Fort Worth 1989, writ denied).

The median cut was a long-standing modification in the roadway. It was not in the original plans for that section of Industrial Boulevard, but it is unclear from the record precisely when the change took place. We are constrained by the rule in *Eaton* to hold that this design change is not a special defect, and therefore no duty to warn exists under the statute. Those cases cited by appellants are inapposite. Changing the design of an existing roadway is also neither maintaining the roadway nor a special defect. *Stanford v. State Dep't of Highways & Pub. Transp.*, 635 S.W.2d 581, 582 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Design of any public work such as this roadway is a discretionary function involving many policy-level decisions, and as such, the governmental entity responsible is not liable for such decisions. *Crossland*, 781 S.W.2d at 433.

In addition, we note that no evidence was presented which indicated the route followed by Kresin even took him through this median cut. By his own admission, he could not recall precisely how he came to be driving up the exit ramp in the wrong direction. Without some evidence to show that the median cut design, be it special defect or not, could in any way have been a precipitating cause of the accident, no fact issue was presented which required submission to the jury and, therefore, a directed verdict was proper. We overrule appellants' seventh point of error.

The judgment of the trial court is affirmed.