**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Betty Anna TOMAN, Appellee.**

**No. 04–82–00263–CV.**

Court of Appeals of Texas, San Antonio.

Oct. 19, 1983.

---

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

Adam T. Serrata, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

## OPINION

BUTTS, Justice.

Nationwide Mutual Insurance Company appeals from a take nothing judgment in favor of Betty Anna Toman, appellee. Nationwide based its suit upon a "release and trust agreement" executed by Toman, the insured, when Nationwide paid her claim arising from an automobile accident. It alleged that Toman received from another insurance company the sum of $9,500.00 for the same claim arising from the automobile accident; the sum, therefore, rightfully belonged to her insurer, Nationwide, by virtue of the subrogation provision. In three points Nationwide argues the trial court erred by concluding the contract terms were ambiguous and denying it recovery of the sum of $9,500.00 from Toman. We agree and, accordingly, reverse and render the judgment.

The trial court filed findings of facts and conclusions of law. TEX.R. CIV.P. 296. Nationwide does not dispute

the facts.[1] On March 13, 1977, in Chester County, Pennsylvania, Toman was a passenger in an automobile driven by an uninsured motorist. That automobile collided with one driven by a motorist who was insured by Government Employees Insurance Company. Toman claimed against her insurer, Nationwide, under the uninsured motorist provision of her policy. Nationwide paid her the sum of $15,000.00 At that time she executed the release and trust agreement, the basis of this suit, which provided in part:

> In consideration of such payment, the undersigned for himself/herself personally and in his/her capacity as designated by Nationwide, such action as may be necessary or appropriate to recover the damages suffered by the undersigned and said minor or estate from *any person or persons, organization, association or corporation* other than Nationwide who or which may be legally liable therefor and to hold *any monies recovered from such person or persons, organization, association or corporation* as a result of judgment or as a result of settlement with or without litigation, in trust for Nationwide to be paid to Nationwide immediately upon recovery thereof; . . . (Emphasis added.)[2]

Subsequently Toman entered her claim against the insured motorist in the other automobile and received $9,500.00 from his insurance company, Government Employees. Nationwide then filed this suit on its contract. Having earlier admitted in answer to Nationwide's Request for Admissions that she did owe the company $9,500.00, Toman also acknowledged the debt at the non-jury trial. She stated, however, she had not read the contract before signing it, and that her lawyer told her she did not owe the money. It is well-settled that the effect of a written release cannot be avoided on the grounds that the releasor was ignorant of, or mistaken as to the contents of the release, or failed to read the same before signing it. *See Schmaltz v. Walder,* 566 S.W.2d 81, 85 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

In its findings of fact the trial court set out the provisions of the release and trust agreement noted above. The conclusions of law were that the agreement "is ambiguous since it does not expressly state that it applies to monies recovered by the defendant from persons other than the uninsured motorist. The ambiguity . . . makes that provision of the Release and Trust agreement unenforceable." Because the facts are not disputed, and Toman never denied signing the agreement, and, indeed, admitted her debt, this reviewing court will look only to the conclusions of law to determine their correctness. *See* 4 R. MCDONALD, TEXAS CIVIL PRACTICE § 16.05 (1971).

A writing is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument indicates genuine uncertainty as to which one of two or more meanings is the proper one. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). *Capitol Rod & Gun Club v. Lower Colorado River Authority,* 622 S.W.2d 887, 894 (Tex. App.—Austin 1981, writ ref'd n.r.e.). If there is no ambiguity, the construction of the writing is a question of law for the court. *Capitol Rod & Gun Club v. Lower Colorado River Authority, supra* at 894, *Citing Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193, 196 (Tex.1962). Generally, in the case of an unambiguous writing, the courts give effect to the intention of the parties as expressed by or as is apparent from the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is the objective, rather than the subjective intent which controls. *Id.* (citations omitted.)

The Supreme Court in *Alba Tool & Supply v. Industrial Contractors,* 585

---

1. Appellee, Toman, did not file an appellate brief. At trial she filed a general denial.

2. Nationwide's authority for this subrogation may be found in TEX.INS. CODE ANN. art. 5.06–1 (Vernon 1981).

S.W.2d 662, 664 (Tex.1979) noted this rule of law stated in *Universal C.I.T. Credit Corp. v. Daniel, supra* at 157, "[I]f a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous."

A fair reading of the quoted portion of the agreement in this case does not indicate that Nationwide would be limited to recovering any monies paid to Toman by the uninsured motorist only. To the contrary, the trust agreement plainly states that any recovery to Toman from any person or persons, organization, association or corporation as a result of a settlement will be held in trust for Nationwide.

We sustain the three points of error and hold that the agreement was clear and unambiguous.

The judgment of the trial court is reversed and rendered.