Mary McCLELLAN, Individually and as Executrix of the Estate of James McClellan; Sharon McClellan and Jonathan Lance McClellan, Appellants,

v.

Teresa BOEHMER, Appellee.

No. 13–85–076–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 7, 1985.

Rehearing Denied Dec. 12, 1985.

■

R. Brent Cooper, Michael W. Huddleston, Dallas, for appellants.

Byron L. Falk, J. Mark Hansen, Vial, Hamilton, Koch & Knox, Dallas, for appellee.

Before NYE, C.J., and DORSEY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a summary judgment which denied relief to the survivors and heirs of James McClellan in a survival and wrongful death action on the basis that a release signed by the decedent barred all subsequent claims.

The undisputed facts show that appellants' decedent, James McClellan, was in a collision with appellee on March 17, 1982. Two days later, on March 19, 1982, Mr. and Mrs. McClellan went to the Irving office of appellee's insurer, State Farm Insurance Company. The McClellans met with claims representative Carolyn Karst and completed and signed a Report of Accident and Claim form. Karst then examined the McClellan's damaged vehicle and estimated the cost of repairing the damages. The McClellans were informed that the property damage to their car amounted to $513.49 and they were given a draft for that amount. The following appeared in fine print on the back of the draft:

### RELEASE

The undersigned payee accepts the amount of this payment in full settlement of all claims for damages to property and for bodily injury whether known or unknown, which payee claims against any insured under the policy shown on the face hereof, or their respective successors in interest, arising out of an accident which occurred on or about the date

shown. This release reserves all rights of the parties released to pursue their legal remedies, if any, against such payee.

James McClellan deposited the draft in his account after endorsing it just below the printed release. He was subsequently hospitalized and, on March 26, 1982, he died of a heart attack, which appellants allege was precipitated by the injury or "heart trauma" McClellan suffered because of the collision.

Appellants brought suit on October 19, 1983, under the Texas Survival and Wrongful Death statutes. TEX.REV.CIV.STAT. ANN. arts. 4675 (Vernon 1940) and 5525 (Vernon 1962). Appellants' first point of error alleges that the trial court erred in granting summary judgment for defendant on the basis of decedent's release since the release did not preclude the subsequent survival and wrongful death actions by decedent's statutory beneficiaries.

*Thompson v. Fort Worth & Rio Grande Railway Co.*, 87 Tex. 590, 80 S.W. 990 (1904), addressed precisely this issue. In *Thompson*, after R.K. Thompson was seriously injured while a passenger on a train, he accepted twelve hundred dollars ($1,200) for injuries and signed a release of all further claims arising out of the accident. After he died from those injuries, his widow and children brought suit under the wrongful death statute for the pecuniary damages they suffered as a result of his death. The Supreme Court held that decedent's release constituted a bar to his family's cause of action for his death. The Court reasoned that "there is but one cause of action under the law, for which there can be but one compensation: hence if the injured party ... compromises his claim with the wrongdoer, and for a valuable consideration executes a release therefor, ... no right of action remains to the persons named in the statute." *Thompson*, 80 S.W. at 991–992.

Appellants urge us to disregard this rule which "has been re-examined in very few appellate decisions since the middle of the Twentieth Century" and ask us to rely on certain foreign authority which they contend holds contrary to *Thompson*.

■ We hold that decedent's release barred any subsequent survival or wrongful death action by decedent's statutory beneficiaries. Appellants' first point of error is overruled.

Appellants' second point of error alleges that the trial court erred in granting defendant's motion for summary judgment because defendant failed to carry her burden as to plaintiff's causes of action independent from the Wrongful Death Act. Appellants argue that appellee failed to negate any element of their causes of action for loss of consortium and mental anguish. The action for loss of consortium was severed and will not be considered in this appeal.

■ Appellants seek to recover damages for mental anguish under the theory of bystander injury. Recovery is generally permitted only "where the shock and mental suffering result from a direct emotional impact upon the Plaintiff from a contemporaneous perception of the accident, as distinguished from learning of the accident from others after its occurrence." *Dawson v. Garcia*, 666 S.W.2d 254, 258 (Tex. App.—Dallas 1984, no writ). It is generally necessary that the plaintiff was also located near the scene of the accident and that the plaintiff and victim were closely related. *See Dawson v. Garcia*, 666 S.W.2d 254 (Tex.App.—Dallas 1984, no writ); *Genzer v. City of Mission*, 666 S.W.2d 116 (Tex.App.—Corpus Christi 1983, ref'd n.r.e.); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ).

"The first two factors require a relatively close connection in both geography and time between the accident and the resulting injury." *General Motors Corp. v. Grizzle*, 642 S.W.2d 837, 844 (Tex.App.—Waco 1982, writ dism'd). Of course, the triggering of the mental anguish is not only from perceiving the accident but also from the realization of its consequences. *General Motors*, 642 S.W.2d at 844.

Mrs. McClellan was not present at the time of the accident, her perceptions of decedent's pain were after the accident. Therefore, she had no contemporaneous perceptions of the decedent's injuries. The first two elements have been disproved. Appellee did not fail to carry her burden as to the cause of action for mental anguish due to "bystander injury." Appellants' second point of error is overruled.

Appellants' points of error three through ten complain that the trial court erred in granting summary judgment for defendant because there were genuine issues of material fact regarding decedent's release including: the intent of the parties, enforceability, decedent's mental capacity, fraud, mutual or unilateral mistake, lack of or inadequacy of consideration and reformation. Appellants seek to have the release set aside or reformed based on these defenses which are in the nature of confession and avoidance. The motion for summary judgment was properly granted unless appellants came forward with summary judgment proof sufficient to raise a fact issue with respect to at least one of these grounds asserted for avoiding the release. *Schmaltz v. Walder*, 566 S.W.2d 81, 82 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). *See Zale Corporation v. Rosenbaum*, 520 S.W.2d 889 (Tex.1975); *Gulf, Colorado & Santa Fe Railway v. McBride*, 159 Tex. 442, 322 S.W.2d 492 (Tex.1958).

In a summary judgment case, we must view the evidence in the light most favorable to the non-movants and resolve any doubts in their favor when determining whether a disputed fact issue exists which would preclude summary judgment. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984); *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589, 593 (Tex.1975).

The summary judgment proof consists of the affidavits of appellee, Teresa Boehmer Horton; appellant, Mary McClellan; and Caroly Karst, the insurance adjuster for State Farm; a copy of the draft issued by Karst to decedent; the Accident and Claim form filled out by decedent; and defendant's answers to interrogatories and admissions.

■ Appellants' third point of error alleges that a material fact issue exists as to the intent of the parties with regard to decedent's release.

A release encompasses the contractual element of mutual intent. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex.1973). But, whether the minds of the parties met must be determined by the objective standard of what the parties said and did, not by their alleged subjective state of mind. *Slade v. Phelps*, 446 S.W.2d 931, 933 (Tex.Civ.App.—Tyler 1969, no writ).

In the instant case, the decedent filled out a claim form on which he indicated that he had suffered a "heart trauma" because of the collision. He accepted and deposited a draft containing a release of claims for property damages and *bodily injury*, which he signed by endorsing the draft. The affidavit of the insurance adjuster, Carolyn Karst, states that the effect of the release was explained and decedent was told that the draft could not be issued if he planned to make any claims in the future. Appellant's affidavit says that the release was not discussed in her presence, and that she and decedent understood the settlement and release to encompass only the property damages.

"It is well-settled that the effect of a written release cannot be avoided on the ground that the releasor was ignorant of, or mistaken as to the contents of the release, or failed to read the same before signing it" in the absence of fraud or some other improper influence. *Nationwide Mutual Insurance Co. v. Tomcn*, 660 S.W.2d 574, 576 (Tex.App.—San Antonio 1983, no writ); *Tobbon v. State Farm Mutual Automobile Insurance Co.*, 616 S.W.2d 243 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.); *Schmaltz v. Walder*, 566 S.W.2d 81 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

A similar situation was presented in *Lawson v. Ulschmid,* 578 S.W.2d 434 (Tex. Civ.App.—Waco 1979, writ ref'd n.r.e.), where appellant was in a collision, accepted and endorsed a draft containing a release of all claims and later filed a personal injury suit. Summary judgment was granted that appellant take nothing. Appellant argued on appeal that the damages to the car and the amount of the draft were each $375.00, that he was not aware at the time that he was injured or that the draft was purported to cover compensation for any injuries, and that the release was obtained through misrepresentation and fraud. The Court of Appeals held that the simple, unambiguous and direct language of the release could not be escaped and that appellant's signature on that release barred any further claims based on the accident.

In the instant case, decedent knew of his injuries and informed the insurance adjustor of them in his claim form. According to the adjuster, she informed decedent of the effect of the release on any future claims. Even if this had not been the case, the release clearly covered "all claims for damages to property and for bodily injury whether known or unknown" arising out of the accident. The location of the release on the back of the draft and decedent's signature and address below the release make obvious the fact that decedent saw the release. If he chose not to read the release, that is no basis for setting it aside at this time. *Nationwide,* 660 S.W.2d at 576; *Tobbon,* 616 S.W.2d at 245; *Schmaltz,* 566 S.W.2d at 85. Based on the objective standard of what the parties said and did, we find that no fact issue is raised as to the intent of the parties regarding the release. *See Slade,* 446 S.W.2d at 933. Appellants' third point of error is overruled.

■ Appellants' fourth point of error alleges that the release is unenforceable because the language is too broad and all-encompassing. Appellants argue that the policy in *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984), which rejects the "unity of release" rule also dictates

that the rights of parties not named in a release are not waived or relinquished. In *Duncan* the court held that "a release fully discharges only those tortfeasors that it names or otherwise identifies," thus affirming their earlier abolition of the unity of release rule in *McMillen v. Klingensmith,* 467 S.W.2d 193 (Tex.1971). *Duncan,* 665 S.W.2d at 419–420. The release in the instant case specifically named only one party to be released, the appellee. We do not now extend the holding of *Duncan* to require that all parties releasing claims because of one party's injuries be specifically named in the release. Such a holding would conflict with *Thompson v. Fort Worth & Rio Grande Railway Co.,* 87 Tex. 590, 80 S.W. 990 (1904). Appellant's fourth point of error is overruled.

■ Appellant's fifth point of error alleges that decedent lacked the mental capacity to fully understand the effect of the release he signed due to medication he was taking at the time.

"The general rule is that a contract, such as the release here involved, executed by a person who does not have the mental capacity to contract is voidable; and if such person signed a contract without sufficient mental capacity to understand the nature and consequences thereof, the contract is not binding and may be set aside." *Schmaltz v. Walder,* 566 S.W.2d 81, 83 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

The summary judgment proof must be sufficient to raise a fact issue as to mental incapacity before the summary judgment will be set aside. *Schmaltz,* 566 S.W.2d at 84.

Other than appellants' one sentence assertion that her "husband was on medication which would have precluded him from fully understanding the effect of such a release," the record is devoid of any evidence of mental incapacity of decedent at the time the release was negotiated or signed. To the contrary, the evidence shows that decedent was fully capable of understanding and completing the insurance company's Report of Accident and

Claim form in a clear and comprehensive fashion [Exhibit "A"]. Appellants' fifth point of error is overruled.

■ Appellants' sixth point of error alleges that there is a genuine issue of material fact as to whether the release was acquired by fraud. A release, like any other contract, may be set aside if it is induced by fraud. *Schmaltz v. Walder*, 566 S.W.2d 81, 84 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

■ The appellant must raise a fact issue with respect to each of the six elements of fraud in the inducement. *Schmaltz*, 566 S.W.2d at 84. Those elements include: 1) a representation, 2) that is false, 3) that was made with knowledge of its falsity or recklessly without any knowledge of its truth and as a positive assertion, 4) that was made with the intention that it be acted on by the party, 5) that the party act in reliance upon it and 6) that he thereby suffered injuries. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex. 1977); *Oilwell Division, United States Steel Corp. v. Fryer*, 493 S.W.2d 487, 491 (Tex.1973).

■ The summary judgment evidence shows no false representation made by Karst, nor any statement by Karst that was made recklessly, without knowledge of the truth, as a positive assertion. In short, there is no evidence of a misrepresentation upon which decedent or appellant relied to their detriment. As appellants' assertions of fraud are not supported by summary judgment evidence, appellants' sixth point of error is overruled.

■ Appellants' seventh point of error alleges a fact issue as to whether the release was the result of mutual or unilateral mistake.

A unilateral mistake is not sufficient to set aside a release. *Nationwide*, 660 S.W.2d 574; *Tobbon*, 616 S.W.2d 243; *Schmaltz*, 566 S.W.2d at 83. See our discussion of point of error number three.

A mutual mistake is one common to both parties to a contract, each laboring under the same misconception. *Schmaltz v. Walder*, 566 S.W.2d 81, 85 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Hanover Insurance Co. v. Hoch*, 469 S.W.2d 717 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.).

Here, there is no evidence that Karst was laboring under the misconception that the release covered only property damage. To the contrary, Karst's affidavit clearly states that she was aware that decedent had been injured, that he was now feeling better, that he planned no further claims, and that the release barred future actions for personal injuries as well as property damages. The evidence does not raise a fact issue relating to mutual mistake. Appellants' seventh point of error is overruled.

■ Appellants' eighth point of error alleges a fact issue as to lack of consideration for decedent's release. Appellant argues that, since the draft was for the precise amount of the damages to decedent's automobile, there was absolutely no consideration given for the release of the claim for personal injuries.

A release executed for a valuable consideration is binding unless procured by fraud, results from mutual mistake or lacks consideration. *Tobbon v. State Farm Mutual Automobile Insurance Co.*, 616 S.W.2d 243 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). The record shows that appellants' decedent received consideration of $513.49 in exchange for his release of *all* further claims arising from the collision. The fact that this amount was identical to the estimated property damage is not controlling, since *some* consideration was received and accepted by decedent in exchange for the release. Appellants' eighth point of error is overruled.

■ Appellants' ninth point of error alleges a fact issue as to inadequacy of consideration, arguing that even if the court deems that the decedent received some consideration for the entire release, the $513.49 was so grossly inadequate that it would be inequitable to enforce the release.

Mere inadequacy of consideration is not sufficient to destroy the effect of a release. *Tobbon v. State Farm Mutual Automobile Insurance Co.*, 616 S.W.2d 243 (Tex.Civ. App.—San Antonio 1981, writ ref'd n.r.e.); *Slade v. Phelps*, 446 S.W.2d 931, 933 (Tex. Civ.App.—Tyler 1969, no writ); *Hayes v. Roux Laboratories, Inc.*, 443 S.W.2d 621 (Tex.Civ.App.—Eastland 1969, no writ). In *Tobbon*, appellant signed a release which recited as consideration ten dollars and the promise to pay all reasonable medical expenses not to exceed $500; in *Slade*, appellant accepted $75 consideration for the signed release; in *Hayes*, appellant signed the release in exchange for materials and services in the application of hair lightener. The Courts of Appeals in each case upheld the sufficiency of the consideration. Appellants' ninth point of error is overruled.

Appellants' tenth point of error submits that there were genuine issues of material fact as to their action for reformation of the release. Appellants contend that, based on the points discussed previously, they were entitled to have their release set aside as to the claims for personal injury and reformed to reflect a release only as to property damages.

■■■■■■ "It is basic to the remedy of reformation that the true agreement between the parties be shown." *Continental Oil Co. v. Doornbos*, 402 S.W.2d 879, 883 (Tex.1966). Equity may reform the instrument to reflect that agreement but cannot create and bring into being an agreement not made by the parties. *Id.* Additionally, a court of equity may not change the terms of a contract in the absence of fraud, accident or mistake. *Davis v. Davis*, 141 Tex. 613, 175 S.W.2d 226 (1943); *Braslau v. Amoco Production Co.*, 549 S.W.2d 260, 262 (Tex.Civ.App.—Corpus Christi 1977, *rev'd on other grounds*, 561 S.W.2d 805 (Tex.1973). As we have overruled each of the points of error upon which appellants base their right to reformation, we also overrule this point. We hold that the trial court did not err in granting summary judgment as to appellants' action for refor-

mation. Appellants' tenth point of error is overruled.

The judgment of the trial court is AFFIRMED.