**Dawn JONES and Husband, Thomas E. Jones, Jr., Appellants,**

v.

**Margarito ORTIZ, Appellee.**

No. 13–93–647–CV.

Court of Appeals of Texas, Corpus Christi.

July 27, 1995.

Publication Ordered May 23, 1996.

Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, for appellants.

Michael A. Johnson, Cullen, Carsner, Seerden & Cullen, Victoria, Mark C. Rains, Cullen, Carsner, Seerden & Cullen, Victoria, for appellee.

## OPINION

Before DORSEY, YAÑEZ and WARREN WHITHAM,[1] JJ.

DORSEY, Justice.

Dawn and Thomas Jones appeal the trial court's finding that their claim for personal injuries is barred by the affirmative defenses of accord and satisfaction or payment and release. The trial court conducted a bifurcated bench trial on the affirmative defenses and entered a take-nothing judgment in favor of appellee, Margarito Ortiz. The dispute centers upon an insurance company check bearing the notation on its face "all claims bodily injury."

### Facts

Dawn Jones was injured in an auto collision with Margarito Ortiz. She testified that after the collision she thought her injuries were minor and limited to her ankle. She and her husband negotiated their property damages with Mike Flynn, Ortiz's insurance adjuster, and accepted a check from him for those damages. The check apparently contained no release language.[2] During their conversations, Jones and Flynn discussed her injuries. She incurred medical expense for a single office visit and lost time from work. Jones' total "special damages" were less than $160 at the time she and Flynn discussed her injuries. Neither discussed any injury other than Jones' ankle. Flynn issued a $500 check for Jones' personal injuries. The check arrived with no cover letter with the notation "all claims bodily injury." There was no additional release language stamped on the back.

Ortiz contends that the $500 check constituted a release of all Jones' claims. Jones contends otherwise. In response to Jones' suit for personal injuries to her back, for which she first received treatment in January 1990, Ortiz claimed the affirmative defenses of accord and satisfaction and of release.

### Points of Error

Appellants complain that the evidence is legally and factually insufficient to support the trial court's findings of fact that the $500 check was to reimburse Jones for future medical and that Jones was aware of potential problems with her back at least a month before she accepted the check. Appellants also attack the trial court's conclusions of law. The trial court concluded that the check was a settlement of Jones' bodily injury claims, that the check constituted a release, that there was no mutual mistake, and that the Joneses are entitled to no further recovery from Ortiz.

### Sufficiency of the Evidence

A trial court's findings of fact, may be reviewed for both legal and factual sufficiency, just as we review jury findings. *Southern States Transp., Inc. v. Texas,* 774 S.W.2d 639, 640 (Tex.1989); *Thomas v. McNair,* 882 S.W.2d 870, 881 (Tex.App.— Corpus Christi 1994, no writ); *Blanco v. Gracia,* 767 S.W.2d 896, 897 (Tex.App.—Corpus Christi 1989, no writ). In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences favorable to the findings. *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate,* 244 S.W.2d 660, 661–62 (Tex. 1951). Our review for factual sufficiency of the evidence differs, we must consider and weigh all the evidence. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

2. The original property damage payment was issued June 26, 1989; a later check was issued July 21, 1989 for rental reimbursement during the repair of the Jones automobile. Subsequent to the initial payment in November 1989, Flynn issued a supplemental check for additional property damage.

Release and accord and satisfaction are affirmative defenses. TEX.R.CIV.P. 94. When a party asserts an affirmative defense, it becomes his burden to plead and produce evidence to support that claim. Any deficiency in the proof of the affirmative defense is chargeable against the party asserting it. When a party pleads release, it becomes his burden to establish the existence of an effective and valid release.

Similarly, the defense of accord and satisfaction requires the party asserting the defense to prove a valid accord and satisfaction. In accord and satisfaction the parties create a new contract in which the existing obligation is discharged through performance of a specified new obligation.

The payment of a disputed or unliquidated claim may constitute an accord and satisfaction. The general rule regarding conditional tender of payment is that the "conditional tender must be expressed by acts or declarations with sufficient clarity that the creditor is bound to know that his acceptance of the tendered payment will constitute full payment of his claim." *H.L. "Brownie" Choate, Inc. v. Southland Drilling Co.,* 447 S.W.2d 676, 678 (Tex.1969); *see also Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex.1970). The *Choate* court reviewed the evidence to support the trial court's judgment of accord and satisfaction. The evidence, as here, consisted of a notation on a check and the testimony of the parties. The check stub applied credits to a balance and showed a sum due and owing. The testimony of the parties was similar to that here, one testified to his intent that the check be full and final settlement, and the other testified that he was not made aware that the check was intended as final settlement of the disputed amount. The court reversed the judgment and held that the notation on the check was no evidence that the payment was intended as a final payment of a disputed amount.

In *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 520 (Tex.1984), the court considered the effect of a final judgment and a notation on the check in determining whether a claimant had previously released her claims and was thus barred from asserting additional claims. *Gracia* involved the injury to a husband and child which was settled by an agreed judgment. The wife was a party to the judgment as next friend of the child. The wife later brought suit for loss of consortium arising out of her husband's injuries. The check bore the notation "Full; Final Settlement" and no more. The court found that the judgment in support of which the check was issued did not purport to release the wife's individual claim and the language on the face of the check did not constitute a release of any more than set out in the judgment. The court rejected the defendant's plea of accord and satisfaction.

This is the unusual case where the claim of release is unsupported by any written document that explicitly sets forth the terms of the agreement. In this case the only writing, the check, does not use the word "release." The only evidence that the check was intended to serve as a release is Flynn's testimony. He testified that he did not specifically recall what he told Jones but that it was his habit and practice to advise claimants that the check was intended as a release of all injuries, past and future, whether known or unknown. Flynn also testified that he later mailed Jones a written release form and that she did not sign it. Moreover, Flynn testified that it was his company's policy not to require a written release in claims for less than $1000. Jones denies that Flynn told her that the check was intended as a full and final release of any and all claims.

Although the defendants plead both accord and satisfaction and release, the proof of either is barely sufficient to withstand a legal sufficiency challenge. Considering all the evidence and the above cited case law, the trial court's finding that Jones intended to release all claims for future medical problems is so against the great weight and preponderance of the evidence as to be manifestly unjust. Ortiz proved the subjective intent of his adjuster to obtain a release, but the habit evidence relied on to prove that Flynn communicated his intent is no more than inference. That inference is outweighed by Flynn's oth-

er testimony and Jones' controverting testimony.

Point one is overruled as to legal sufficiency of the evidence, it is sustained to the factual sufficiency of the evidence as to future claims for bodily injury.

### Conclusions of Law

■ We review the court's conclusions of law to determine their correctness. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Appellants challenge the trial court's conclusion that the check was a release of all future bodily injury claims. We consider that the trial court's conclusion was erroneous and not supported by the evidence. Since we conclude that the check was not itself a release nor does it constitute an accord and satisfaction, we also conclude that the trial court's conclusion that Jones' other claims are barred is also erroneous. Point five is sustained in part and overruled in part.

### Conclusion

Our disposition requires that the cause be remanded for a new trial on the issues of release and accord and satisfaction. We do not address the issue of mutual mistake. TEX.R.APP.P. 90(a).

The JUDGMENT is REVERSED and REMANDED.

Dissenting opinion by WARREN WHITHAM, J. (Retired).

WARREN WHITHAM, Justice (Retired), Dissenting.

I respectfully dissent. In this personal injury action, the trial court conducted a bifurcated bench trial to determine whether plaintiff-appellants, Dawn Jones and husband, Thomas E. Jones', cause of action was barred by the affirmative defenses of accord and satisfaction, payment and release.[1] The trial court entered a take-nothing judgment in favor of defendant-appellee, Margarito Ortiz. The dispute centers upon an insurance company check bearing the notation on its face "all claims bodily injury." Contrary to the Jones' first point of error, I conclude that the evidence was legally and factually sufficient to support the trial court's findings of fact. Contrary to the Jones' second point of error, I agree with the trial court's conclusions of law (1) that settlement of Ms. Jones' bodily injury claims was made, (2) that Ms. Jones further bodily injury claims were barred by the doctrine of release, (3) that the parties were not operating under a mutual mistake and (4) that the Jones are not entitled to recover any further damages from Ortiz. Accordingly, I would affirm.

### FACTUAL BACKGROUND

*The record reflects these facts stressed by the Jones.* On June 7, 1989, Dawn Jones suffered injury in an automobile accident when Ortiz failed to yield to a stop sign and caused his vehicle to collide with Ms. Jones' vehicle. Ms. Jones immediately reported her injuries to the EMS technician at the scene and sought medical treatment from her doctor, Dr. Taylor Starkey, the same day. Ms. Jones' only complaint and diagnosis at that time was sprained ankle. Two days after the accident, Ms. Jones was contacted by Ortiz's insurance adjuster, Mike Flynn of Continental Loss Adjusting Company. Flynn obtained Ms. Jones' statement concerning the accident and discussed with her the damage to her vehicle and her person. The only injury discussed was Ms. Jones' sprained ankle. Following this initial contact, Ms. Jones had several conversations with Flynn regarding her property damage and her personal injuries. Ms. Jones reported that her ankle was better and that everything regarding repair to her vehicle was going fine. Continental issued a check in payment of the property damage on June 26, 1989, in the amount of $3,428.72. On July 21, 1989, less than two months after the accident, two additional checks were issued to the Jones regarding the accident. One check was in the amount of $386.42 representing a rental car expense. The other check was in the amount of $500.00 and had the notation "all claims

---

1. On appeal, the parties do not brief or argue the doctrine of accord and satisfaction but only the doctrine of release. Consequently, the doctrine of accord and satisfaction is not before us.

bodily injury" on the face of the check. This is the check at issue. Thereafter, in November of 1989, another check was sent to the Jones in the amount of $109.86 for supplemental property damage to their vehicle. These checks were endorsed and deposited by the Jones. Neither Ms. Jones nor her husband consulted with an attorney before accepting any of these checks. The $500.00 check for Ms. Jones' bodily injuries was sent to her without any cover letter. No release was ever signed with regard to this or any other payment. Ms. Jones and her husband testified that no release was sent with the check. Flynn testified that he sent a release with the check, but he had no copy of the release in his file and testified that when he contacted Ms. Jones, she told him she never received a release. Several months later, Flynn sent to the Joneses a release that was never signed.

Prior to the $500.00 check being issued, Ms. Jones and Flynn had some discussions regarding compensation for Ms. Jones' personal injuries. The only personal injury damages that were discussed were Ms. Jones' injured ankle and her lost wages. Ms. Jones testified that she had no discussion with Flynn or anyone with Continental Loss Adjusting regarding release of any future claims for injuries. Ms. Jones acknowledged that the $500.00 payment was to compensate her for something more than her medical expenses and lost wages she had incurred to date. The only evidence of what constituted "something more" was the pain and suffering Ms. Jones experienced in the accident related to her injured ankle. Flynn was unable to remember whether he explained to Ms. Jones that the $500.00 would be releasing his company from liability for future damages. Flynn had no memory of the substance of their discussions concerning the $500.00 payment. He could only assume that they agreed to that amount from the fact that he requested a check be issued for that amount. Flynn testified that a release was not required under his company's standard procedure for claims less than $1,000.00.

At the time the $500.00 payment was made, Ms. Jones had not seen a doctor other than her initial visit to Dr. Starkey. At that time, Ms. Jones had only sought treatment for her ankle. Flynn testified that Ms. Jones never discussed with him any problems with her back. Approximately six months later, in January of 1990, Ms. Jones sought treatment from Dr. Starkey regarding problems with her back. She had recently begun having pain in her back in an area about eight inches in diameter that had begun about a week after the accident as a coin-size area of numbness in her back. This was the first time she had seen a doctor or sought treatment for any problem with her back. Ms. Jones had not done anything to strain her back or pull a muscle between the time of the accident and the time she noticed the numbness. When Ms. Jones contacted Continental about these additional injuries and their related expenses, she was told that her file had been closed, and all further claims were denied based upon her acceptance of the $500.00 check.

*The record also reflects these facts stressed by Ortiz.* In January of 1990, Ms. Jones sought treatment from Dr. Starkey regarding problems with her back. According to Dr. Starkey's records, Ms. Jones first noted a numbness in her back approximately one week after the automobile accident. The numbness was approximately the size of a coin. By January of 1990, the numbness had enlarged to an area approximately eight inches in diameter.

At the time that the $500.00 check for "all claims bodily injury" was issued to Ms. Jones (some six weeks after the accident), her medical expenses totalled $60.00 and her lost wages were less than $100.00. The amount paid to Ms. Jones for her bodily injury claim was more than three times the amount of her actual wages lost and medical expenses incurred at the time as a result of her injuries. Both the Jones understood that the $500.00 check was to compensate her for something in addition to the actual medical and lost wages that she had incurred at that time. It was to compensate Ms. Jones for past and future medical expenses, along with pain and suffering.

Although Flynn never received a release from Ms. Jones, Flynn testified that Continental often does not require written releases

to be signed by claimants. In many cases, the bank drafts themselves serve as the release. Flynn testified that he had at least one telephone conversation with Ms. Jones during which he offered her $500.00 to cover her personal injuries. Ms. Jones told him she would have to discuss the matter with her husband and call him back. Later she called Flynn and told him that the $500.00 was sufficient. Although Flynn cannot remember the exact words he used in his conversation, he is sure that he followed his normal procedure and explained that by accepting the $500.00 settlement they were releasing Ortiz from any further liability for personal injuries as a result of the accident.

The Jones thereafter received the check and had it in their possession for at least a day or two before depositing the check.

### THE POINTS OF ERROR

In their first point of error, the Jones contend that the trial court erred in entering a take-nothing judgment in favor of Ortiz because the evidence is legally and factually insufficient to support the trial court's finding of fact nos. 5 and 8, to wit: (1) that the $500.00 check was to reimburse Ms. Jones for any future medical problems resulting from the accident and (2) that Ms. Jones was aware of a potential problem with her back at least one month before the $500.00 check was issued and accepted. In their second point of error, the Jones contend that the trial court erred in entering a take-nothing judgment in favor of Ortiz because its conclusions of law are erroneous. Specifically, that it was erroneous for the trial court to conclude (1) that the Jones acceptance of the $500.00 check and their endorsement thereon effectuated a settlement of Ms. Jones bodily injury claims, (2) that therefore the Jones' pursuit of any further bodily injury claims is barred by the doctrine of release, (3) that the parties were not operating under a mutual mistake and (4) that the Jones are not entitled to recover any further damages from Ortiz. The Jones brief and argue both of their points of error together. Nevertheless, I shall separate my disposition of this appeal into the three issues sought to be addressed

and proceed with the opinion directed at those controlling issues.

### THE JONES' CHALLENGE TO THE TRIAL COURT'S FINDINGS OF FACT

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's verdict. *Alamo Bank of Texas v. Palacios*, 804 S.W.2d 291, 295 (Tex.App.—Corpus Christi 1991, no writ). With this principle before me, and in light of the Jones' evidentiary challenges to the trial's court findings of fact, I repeat well-known rules.

A "legally insufficient" point is a "no evidence" point presenting a question of law. In deciding that question, we must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985). If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely, and judgment rendered for the appellant unless the interests of justice require another trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). It is fundamental that these fact findings must be upheld if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown S. & L. Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). In reviewing "factually insufficient" points, we consider all the evidence including any evidence contrary to the judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). A finding can be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Applying these principles, we must first determine if there is evidence of probative value to support the trial court's findings. When both "no evidence" and "insufficient evidence" points of error are raised in a court of appeals, the court should rule upon the "no evidence" point first. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). Furthermore, we observe the alternatives available to the trier of fact when presented with conflicting evidence. The trier of fact has several alternatives

available when presented with conflicting evidence. It may believe one witness and disbelieve others. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). The trier of fact may resolve inconsistencies in the testimony of any witness. *Id.* As a general rule, it is peculiarly within the province of the trier of fact to weigh opinion evidence and the judgment of experts. *See Octane Oil Refining Co. v. Blankenship–Antilley Implement Co.,* 117 S.W.2d 885, 886 (Tex.Civ. App.—Eastland 1938, no writ). It is within the province of the trier of fact to decide which expert witness should be credited. *See American Airlines, Inc. v. United States,* 418 F.2d 180, 194 (5th Cir.1969). Applying these principles, I conclude, that the trial court, as trier of fact, in the present case could believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness. Indeed, the trier of fact is the sole judge of the witnesses' credibility and the weight to be given testimony. *See Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962). Hence, in my disposition of the Jones' challenge to the legal and factual sufficiency of the evidence, I am mindful of the alternative available to the trial court when presented with conflicting evidence.

As pointed out, we must rule upon the "no evidence" point first. The parties, however, do not favor us with briefs that divide the "legal" and "factual" arguments into any separate presentations for consideration. Instead, we are confronted with arguments subdivided into categories I will describe as: (1) "rules in construing a release," (2) "application of those rules," (3) "the court's finding that Ms. Jones was aware of a potential problem with her back" and (4) "whether the parties were operating under a mutual mistake." Moreover, the parties address the issue before us as a question of whether the $500.00 check with its front inscription "all claims bodily injury" endorsed and deposited by the Jones *releases* Ortiz from liability for Ms. Jones' back injuries. In any event, I now turn to the three main issues sought to be raised under the Jones' two jointly briefed points of error: (1) whether the evidence is legally sufficient to support the trial court's findings of fact, (2) whether the evidence is factually sufficient to support the trial court's findings of fact, and (3) whether the parties as a matter of law were operating under a mutual mistake. Initially, I consider the matter of legally insufficient evidence.

Considering only the evidence and the inferences therefrom tending to support the trial court's first challenged fact finding, I look first at the trial court's fact finding that the check for $500.00 was to reimburse Ms. Jones for any future medical problems resulting from the accident in question. I note that the check inscription refers to *"all claims bodily injury"* (emphasis added). I focus on the word "all." Whether the minds of the parties have met is determined by the objective standard of what the parties said and did, not by their alleged subjective states of mind. *McClellan v. Boehmer,* 700 S.W.2d 687, 691 (Tex.App.—Corpus Christi 1985, no writ) (disapproved on other grounds in *Williams v. Glash,* 789 S.W.2d 261, 265 (Tex. 1990)).

In the present case, viewed by this objective standard, I read that the parties said *"all* claims bodily injury." (emphasis added). I note that the second word following "all" is stated in the plural reference to "claims." Therefore, "all claims" must mean each and every claim for bodily injury. I decline to interpret the plural "claims" to be a reference to a singular "claim" for an ankle injury as the Jones would have us do. Hence, I decline to interpret "all claims bodily injury" to read "all ankle personal injuries." Further, I note the evidence and inferences therefrom tending to support the finding as argued by Ortiz and referred to earlier. At the time that the $500.00 check for "all claims bodily injury" was issued to Ms. Jones (some six weeks after the accident), her medical expenses totalled $60.00 and her lost wages were less than $100.00. The amount paid to Ms. Jones for her bodily injury claim was more than three times the amount of her actual wages lost and medical expenses incurred at the time as a result of her injuries. Both the Jones understood that the $500.00 check was to compensate her for something in addition to the actual medical and lost wages that she had incurred at that time. It was to compensate Ms. Jones for past and

future medical expenses, along with pain and suffering. Although Flynn never received a release from Ms. Jones, Flynn testified that Continental often does not require written releases to be signed by claimants. In many cases, the bank drafts themselves serve as the release. Flynn testified that he had at least one telephone conversation with Ms. Jones during which he offered her $500.00 to cover her personal injuries. Ms. Jones told him she would have to discuss the matter with her husband and call him back. Later she called Flynn and told him that the $500.00 was sufficient. Although Flynn cannot remember the exact words he used in his conversation, he is sure that he followed his normal procedure and explained that by accepting the $500.00 settlement the Jones were releasing Ortiz from any further liability for personal injuries as a result of the accident. The Jones thereafter received the check and had it in their possession for at least a day or two before depositing the check. Therefore, I conclude that the evidence is legally sufficient to support the trial court's fact finding that the check for $500.00 was to reimburse Ms. Jones for any future medical problems resulting from the accident in question.

Next, I look at the trial court's fact finding that Ms. Jones was aware of a potential problem with her back at least one month before the $500.00 check was issued and accepted. Ortiz points out that in January of 1990 Ms. Jones returned to her doctor, Dr. Starkey, for treatment. *According to Dr. Starkey's records, Ms. Jones first noted a numbness in her back approximately one week after the automobile accident (some five weeks prior to the date of the check).* The numbness was approximately the size of a coin. By January of 1990, the numbness had enlarged to an area approximately eight inches in diameter. Therefore, I conclude that the evidence is legally sufficient to support the trial court's fact finding that Ms. Jones was aware of a potential problem with her back at least one month before the $500.00 check was issued and accepted.

Considering only the evidence and the inferences therefrom tending to support the trial court's fact findings and disregarding all evidence and inferences to the contrary, I conclude that the evidence is legally sufficient to support the trial court's finding of fact nos. 5 and 8. Consequently, the trial court did not err in entering a take-nothing judgment in favor of Ortiz for the "no evidence" reason argued under the Jones' first point of error. Therefore, to the extent that the Jones' first point of error challenges the legal sufficiency of the evidence in support of the trial court's finding of fact nos. 5 and 8, I would overrule the Jones' first point of error.

Thus, I turn to our assigned task of deciding whether the evidence is factually sufficient to support the trial court's finding of fact nos. 5 and 8. In doing so, I must apply the instructions of *Burnett,* 610 S.W.2d at 736, as directed in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633–36 (Tex.1986). I now provide the analysis of all the evidence which must be weighed and considered in deciding whether the evidence is factually sufficient to support the trial court's fact findings. The evidence in support of the trial court's fact finding is summarized above in my disposition of the no evidence point and I will repeat only as necessary. Thus, I turn to the evidence contrary to the trial court's fact finding.

Here is what the Jones argue to be the contrary evidence which must be weighed and considered in deciding whether the evidence is factually sufficient to support the trial court's fact finding that the check for $500.00 was to reimburse Ms. Jones for any future medical problems resulting from the accident in question. As correctly summarized for us by Ortiz, the Jones advance this evidence contrary to that fact finding:

(a) that at the time of the check, Ms. Jones had experienced pain and sought treatment only for the injury to her ankle;

(b) that Flynn did not discuss with Ms. Jones that she was releasing claims for future damages;

(c) the absence of any written agreement to release future claims for injuries related to the accident; and

(d) the insurance company's supplemental property damage payment.

Next, here is what the Jones argue to be the contrary evidence which must be weighed and considered in deciding whether the evidence is factually sufficient to support the trial court's fact finding that Ms. Jones was aware of a potential problem with her back at least one month before the $500.00 check was issued and accepted. The Jones advance this evidence contrary to that fact finding:

(a) at the time Ms. Jones accepted the $500.00 check she had not had any problem with her back.

(b) that while Ms. Jones might have had a very small point of numbness in her back at the time the $500.00 payment was made, she had no notice *at that time* that this condition was going to cause her any back or other problems in the future; (emphasis by Ms. Jones)

(c) Ms. Jones had never made any complaint to anyone of any back pain or back problem, had never sought any treatment for anything related to her back, and never discussed with Flynn anything related to her back.

The Jones offer no more than the above in support of their factual insufficiency contentions. In large part the Jones' position is that the trial court should have believed the Jones' evidence and inferences therefrom and disregarded Ortiz's evidence and inferences therefrom. We have no authority under the facts of this case to hold that the trial court, as the trier of fact, should have believed the witnesses whose testimony the trial court saw fit not to believe. *Farr v. Bell,* 460 S.W.2d 431, 434 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.). With no more than the evidence and argument advanced by the Jones, then considering all the evidence, I conclude that the evidence is factually sufficient to support the trial court's fact finding nos. 5 and 8. Considering and weighing all the evidence, I am unable to state in what regard the contrary evidence greatly outweighs the evidence in support of the trial court's findings. *Pool,* 715 S.W.2d at 635. In the present case, therefore, I cannot agree that the trial court's findings are factually insufficient. Moreover, I cannot agree that the trial court's findings are so against the great weight and preponderance of the evi-

dence as to be manifestly unjust, or that the trial court's findings shock the conscience of this Court, or that the trial court's findings clearly demonstrate bias. *Id.* In short, I cannot agree to "unfind" the trial court's findings and substitute our judgment for that of the trial court. I would hold, therefore, that the evidence is factually sufficient to support the trial court's finding nos. 5 and 8. To the extent that the Jones challenge the factual sufficiency of the evidence to support the trial court's finding nos. 5 and 8, I would overrule the Jones' first point of error.

### THE JONES' CHALLENGE TO THE TRIAL COURT'S CONCLUSIONS OF LAW

Under their second point of error, the Jones complain of the trial court's conclusions of law (1) that the Jones' acceptance of the $500.00 check and their endorsement thereon effectuates a settlement of her bodily injury claims, (2) that therefore the Jones' pursuit of any further bodily injury claims is barred by the doctrine of release, that (3) the parties were not operating under a mutual mistake and that (4) the Jones are not entitled to recover any further damages from Ortiz.

With respect to the trial court's challenged conclusions of law, the Jones insist that because the trial court erred in finding as a fact that the $500.00 was to compensate the Jones for future injuries and that Ms. Jones knew of a potential problem with her back at the time she accepted the check, it was accordingly error to conclude as a matter of law that the Jones' claims were barred by release. In my disposition of the Jones' first point of error, I would hold that the trial court did not err in making the two fact findings. Consequently, the trial court did not err in concluding as a matter of law that the Jones' claims were barred by the doctrine of release. Thus, I reach the actual ground upon which the Jones challenge the take-nothing judgment in favor of Ortiz. The Jones assert that even if Ortiz met his burden to show that the language of the check and the Jones' endorsement thereon constituted a release of all of Ms. Jones' bodily injuries, the trial court erred in failing

to conclude as a matter of law that the parties were operating under a mutual mistake. The Jones maintain that if the check was a full release for present and future injuries, then it set out a bargain that was never made, and must be invalidated, citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990).

## MUTUAL MISTAKE

Therefore, under their second point of error, the Jones insist that as a matter of law the parties were operating under a mutual mistake with respect to the release and that the release must be invalidated. The Jones' argument relies solely on the Supreme Court's opinion in *Williams*. In this connection, I note that the Jones' second point of error challenges conclusions of law made by the trial court and that the second point of error does not challenge the legal or factual sufficiency of the evidence to support any express or implied fact finding of the trial court concerning mutual mistake. Thus, I turn to consider the application of *Williams* in deciding whether the trial court erred in concluding as a matter of law that the parties were not operating under a mutual mistake.

The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the release, such as the knowledge of the parties at the time of signing concerning the injury, the amount of consideration paid, the extent of negotiations and discussions as to personal injuries and the haste or lack thereof in obtaining the release. *Williams*, 789 S.W.2d at 264. I point out that in *Williams* it was undisputed that there was no negotiations or bargaining for release of a personal injury claim. Indeed, the face of the check contained the insurance company's code denoting the settlement of a property claim. *Williams*, 789 S.W.2d at 263. In the present case, property damage claims were negotiated separately. *Moreover, in the present case, Ms. Jones had knowledge of a potential problem with her back as the result of the accident at least one month before the $500.00 check was issued*

*and accepted.* Furthermore, in the present case, the amount of consideration paid Ms. Jones was more than three times the amount of her medical expenses and lost wages at that time, and there is evidence that both the Jones understood that the $500.00 was to reimburse Ms. Jones for her medical expenses and lost wages and to compensate her for future medical problems and for any pain and suffering. Certainly, in the present case the matter of "haste" in obtaining the release cannot be charged against Ortiz. The Jones had the $500.00 check in their possession for at least a day or two and both read it prior to depositing the check. Indeed, the matter of the $500.00 check to cover Ms. Jones injuries was discussed by telephone between Flynn and Ms. Jones, and Ms. Jones then discussed the matter with her husband and later telephoned Flynn and told him the check was sufficient.

Considering the objective circumstances surrounding the obtaining of the release in the present case, I conclude that the Jones failed to meet their burden of proof to avoid the release by establishing mutual mistake. *See Williams*, 789 S.W.2d at 264. In sum, I conclude that the Jones failed to establish that the release sets out a *bargain that was never made. See Williams*, 789 S.W.2d at 265. (emphasis by the Supreme Court). The law of mutual mistake does not, of course, preclude a person from intentionally assuming the risk of unknown injuries in a valid release. *Williams*, 789 S.W.2d at 264. Because the Jones failed in their burden to show that they did not intentionally assume the risk of unknown injuries, I conclude that the trial court did not err in concluding as a matter of law that the parties were not operating under a mutual mistake. I would overrule the Jones' second point of error.

As I would overrule the Jones' second point of error, I deem it important to repeat some final observations made in *Williams*. The doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain. Parties should be able to rely on the finality of freely bargained agreements. *Williams*, 789 S.W.2d at 265. In narrow circumstances a party may raise a fact issue for the trier of fact to set aside a

release under the doctrine of mutual mistake. *Williams,* 789 S.W.2d at 265. Earlier, I noted that the Jones raise the doctrine of mutual mistake under their second point of error by complaining of trial court error in making a conclusion of law that the parties were not operating under a mutual mistake. Thus, the Jones do not complain that they have raised a fact issue for the trier of fact to set aside a release under the doctrine of mutual mistake. Moreover, I earlier noted that the Jones do not advance any challenge to the legal and factual sufficiency of the evidence to support any express or implied trial court finding of fact pertaining to the doctrine of mutual mistake.

Because I would overrule the Jones' two points of error, I would affirm the trial court's judgment.